***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties prior in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and the named employer at all relevant times.
3. The carrier liable on the risk is correctly named.
4. Plaintiff's average weekly wage is $280.00 per week.
5. Plaintiff sustained an injury on or about April 19, 2000.
6. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of documents including selected Industrial Commission forms, plaintiff's recorded statement, plaintiff's medical records and a memorandum prepared by Tim Putnam.
7. The deposition of Robert B. Whitmore, M.D. is a part of the evidentiary record in this matter.
 ***********
Based upon the evidence of record and findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On and before April 19, 2000, plaintiff was employed by defendant-employer Quality Temporary Services and assigned to work at a Stein Mart facility as a manual laborer. Stein Mart was preparing to open a new department store and needed warehousemen to unload and stack boxes of merchandise, equipment and fixtures.
2. On April 19, 2000, as plaintiff was unloading a truck, he came across an unusual box which he attempted to move by himself. In both plaintiff's recorded statement and at the hearing, plaintiff indicated that the box was unusually heavy and felt like it was full of "concrete blocks". Upon attempting to move the box, plaintiff immediately felt a sharp pain in his scrotum.
3. Plaintiff did not report his injury as he was afraid that the people at Stein Mart would send him home. Plaintiff was making $7.00 per hour and working extensive overtime and did not want to, and could not afford to, lose his job. Plaintiff continued to experience significant pain but took frequent breaks, slacked off in his work, and drank Maalox.
4. Plaintiff continued to work in this manner, and on May 2, 2000 after working quite a bit of overtime, he was given a ride home by his supervisor. After going to bed that evening plaintiff awoke in the early morning of May 3, 2000 with unbearable pain and summoned an ambulance.
5. Plaintiff was taken to the emergency room at Nash General Hospital where he was seen by Dr. Choon Heong P'Ng. Dr. P'Ng diagnosed plaintiff with right epididymitis and admitted him to Nash General Hospital. Dr. P'Ng referred plaintiff to Dr. Robert B. Whitmore, a board-certified urologist, for treatment.
6. Plaintiff's history to both Nash General Hospital and Dr. Whitmore indicate that plaintiff had increasing testicular pain which had been present for at least five days. This history is consistent with plaintiff's relation of the incident of April 19, 2000 and his continuing pain. Although plaintiff denied any trauma to his testicles at the emergency room, it is clear that plaintiff's intention was to communicate that he had not received any direct injury to his testicles.
7. On May 8, 2000, after intravenous antibiotics failed to improve plaintiff's condition, Dr. Whitmore performed a right inguinal orchiectomy removing his right testicle. Later that same day, plaintiff underwent a second surgery due to a hematoma.
8. Dr. Whitmore was of the opinion that plaintiff's severe right-sided epididymitis was not caused by the August 19, 2000 lifting incident but could have been exacerbated and made worst by that incident. Although Dr. Whitmore on cross examination indicated that it would have been extremely difficult for plaintiff to continue functioning based upon the condition on which he presented himself to the emergency room, it is clear from plaintiff's testimony that his condition gradually worsened until it became acute on May 2-May 3, 2000 and was not that severe from the time of the incident up to that time.
9. On May 11, 2000, plaintiff was released from Nash General Hospital. Plaintiff continued treatment with Dr. Whitmore, and he was released to return to work with a twenty (20) pound lifting restriction on June 22, 2000. After reaching maximum medical improvement, plaintiff was released to full duty work with no restrictions on August 31, 2000.
10. There was testimony provided by plaintiff that Stein Mart may have had a position available for him as of June 22, 2000. However, there is no indication that this employment was actually offered to plaintiff or that the employment was suitable to plaintiff's restrictions. Indeed, plaintiff's regular job was not within his work restrictions at that time.
11. Plaintiff became employed with a new employer on August 31, 2000 where he earned $7.00 an hour and worked forty (40) hours per week.
12. Plaintiff's testimony is accepted as credible.
13. On April 19, 2000, plaintiff sustained an injury by accident arising out of and in the course and scope of his employment when he attempted to lift a box that was unusually heavy and felt like a box full of concrete blocks. As a direct and proximate result of his April 19, 2000 compensable injury and as a natural result thereof, plaintiff sustained an exacerbation and worsening of his epididymitis.
14. From May 3, 2000 through and including August 30, 2000, as a direct and proximate result of his compensable injury, plaintiff was unable to engage in activities required by his former job.
15. As a direct and proximate result of plaintiff's compensable injury, plaintiff is entitled to temporary total disability compensation for the period from May 3, 2000 through and including August 30, 2000.
16. The right testicle is an important organ or part of the body.
17. As a direct and proximate result of plaintiff's compensable injury by accident on April 19, 2000 and the resulting loss of plaintiff's right testicle, plaintiff is entitled to permanent partial disability compensation in the amount of $12,500.00.
18. All medical treatment which plaintiff received from Nash General Hospital, Dr. Whitmore, the ambulance service and any other treatments which they prescribed was reasonably designed to effect a cure, provide relief and/or lessen plaintiff's period of disability.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On April 19, 2000, plaintiff sustained an injury by accident arising out of and in the course and scope of his employment when he attempted to lift a box that was unusually heavy and felt like a box full of concrete blocks sustaining an exacerbation and worsening of his epididymitis resulting in removal of his right testicle. N.C.G.S. §97-2(5), Calderwood v. Charlotte-Mecklenburg Hospital, 135 N.C. App. 112,519 S.E.2d 61, (1999).
2. From May 3, 2000 through and including August 30, 2000, as a direct and proximate result of his compensable injury, plaintiff was unable to engage in activities required by his former job and is therefore entitled to temporary total disability compensation for this period. N.C.G.S. § 97-29.
3. As a direct and proximate result of plaintiff's compensable injury and the resulting loss of plaintiff's right testicle, an important organ or part of the body, plaintiff is entitled to permanent partial disability. N.C.G.S. § 97-31(24).
4. All medical treatment which plaintiff received from Nash General Hospital, Dr. Whitmore, the ambulance service and any other treatments which they prescribed were reasonably designed to effect a cure, provide relief, and lessen plaintiff's period of disability, and plaintiff is entitled to have defendants provide the same. N.C.G.S. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. For plaintiff's compensable injury, defendants shall pay temporary total disability compensation to plaintiff at the rate of $186.68 per week from March 3, 2000 through and including August 30, 2000. This amount has accrued and shall be paid in a lump sum. This amount shall be subject to an attorney's fee contained in Paragraph 3.
2. For the resulting loss of plaintiff's right testicle, an important organ or body part, due to his compensable injury, defendants shall pay permanent partial disability compensation to plaintiff in the amount of $12,500.00. This amount shall be subject to an attorney's fee contained in Paragraph 3.
3. A reasonable attorney's fee of 25% of the compensation due under Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff and paid by defendants directly to plaintiff's counsel.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury.
5. Defendants shall pay the costs, including an expert witness fee in the amount of $300.00 to Dr. Whitmore if not already paid.
This the ___ day of August 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER